Stover et al., Appellants, *v.* Five Way Service Center.

336

Argued September 13, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James E. McLaughlin,* with him *William R. Caroselli,* and *McArdle, McLaughlin, Paletta & McVay,* for appellants.

*Daniel F. Knittle,* with him *Greevy, Knittle & Mitchell,* for appellee.

OPINION PER CURIAM, December 13, 1971:
Order affirmed.

———

DISSENTING OPINION BY CERCONE, J.:

This is an appeal from the grant of a new trial to defendant in a trespass action after the jury returned a verdict in favor of the plaintiff.

The facts as placed in evidence by the plaintiff are as follows:

On July 26, 1965, the plaintiffs' vehicle had the front brakes relined and installed at the defendant Five Way Service Center. During the next twelve days the car had been used on only four occasions by members of

the family. On three of the occasions the car was used in the area of Lock Haven and on one other occasion it was used for a driver's test.

On August 6, 1965 the minor plaintiff, Kerry Stover, returned on weekend leave from the Naval Center at Bainbridge, Maryland. The following day, August 7, 1965, he was driving from Logantown to Lock Haven, Pennsylvania on Route 880, a two lane road with a speed limit of fifty miles per hour. The plaintiff had just made a right-hand turn and was going into a left-hand turn at approximately forty to forty-five miles per hour and was applying his brakes when suddenly the steering wheel pulled to the right. The plaintiff could not steer the vehicle, went off the road to the right and struck the guardrail and a rock embankment. He was thrown from the vehicle, a fire started in the car, and the plaintiff suffered serious injuries. The vehicle was towed from the scene of the accident by a Mr. Melvin Smith and placed in his yard. It remained there without any alteration or change until it was examined by a Mr. Jesse Fisher. Mr. Fisher made a visual inspection of the vehicle at Mr. Smith's establishment and requested that the steering box and right front wheel assemblies be removed in order for him to examine them further. At the time of this visual inspection Mr. Fisher noted that the right front wheel was jammed and could not move but the left wheel was moving freely.

Mr. Smith and Mr. Stover (minor plaintiff) then removed the steering box and right front wheel assemblies. At this time Mr. Smith noted that the right front wheel should have been able to turn on the spindle but did not. Before prying the drum off the wheel, Mr. Smith placed a large piece of cardboard under the area, presumably to prevent loss of any parts that might fall. Mr. Smith then pried the drum off. Nor-

mally the drum would not need to be pried off. When this was accomplished, Mr. Smith discovered that the holdback pin of the right front wheel was missing. The brake lining also showed signs of having rubbed against the drum. Mr. Smith took the holdback pin from the left front wheel and placed it on the right front wheel and found that the wheel spun freely. He then removed the left front wheel pin from the right front wheel leaving the right front wheel assembly as he had found it, without a pin. Mr. Smith had worked as a mechanic from 1940 until 1960 installing brake lining and brake shoes, had pulled brake drums and had done State Inspections.

The steering box and right front wheel assemblies were then taken by plaintiff Stover to Mr. Fisher. Mr. Fisher disassembled the steering box and found it to be in good order. In examining the right front wheel and brake assemblies, Mr. Fisher also found that the holdback pin was missing and that there was evidence of scorching or scraping on the brake shoes and drum. The purpose of the holdback pin in the front brake assembly is to control the brake shoe position when the brakes are applied, allowing the brake shoe to come in direct and even contact with the brake drum, and providing a smooth application of the brakes. Mr. Fisher stated that the amount of the marking and scorching on the brake drum showed that the holdback pin had only been missing for a relatively short time before the accident. This opinion was also shared by Mr. Smith. Mr. Fisher testified as an expert on behalf of the plaintiffs and is a member of the Transportation Maintenance Technical Committee of the Society of Automotive Engineers, and also a member of that Society. He began working for the New York City Transit Authority in 1941, and in 1953 became the Supervisor of Mechanical Maintenance for the Authority. Mr. Fisher

testified that in his opinion the lock nut or lock cap which would secure the holdback pin in position had not been properly seated (turned 90°) by the mechanic at the Five Way Service Center, Inc. and this eventually caused the lock washer to become loosened and disengaged from the pin, causing the pin to fall out, which in turn caused the right front wheel to lock with the result that the car went out of control and off the road.

At the trial Mr. Fisher was shown a brake mechanism introduced into evidence by plaintiffs. His testimony was that the holdback pin *in that exhibit* had been forced and pulled out through the lock washer or lock cap. stripping or tearing away the material on the washer, which indicated that the lock cap had been turned 90° as it should have been.

It was the lower court's opinion that this testimony by Mr. Fisher as to the physical condition *of the exhibit* "so devastated" Mr. Fisher's testimony that "the court is shocked that it could be given any credence." However, in coming to this conclusion the trial court failed to consider the nature and the entirety of Mr. Fisher's testimony. At no time did Mr. Fisher change his testimony as to conditions he found on the brake mechanism given to him for inspection after the accident and prior to trial. On the contrary, he confirmed unequivocally his findings as to that prior inspection, testifying as follows: "A. I don't believe this is what I originally saw on the vehicle or I would have made a note of it. Q. This is what originally was brought into Court by the plaintiff, Mr. Fisher. A. I still say that if I would have seen this when I originally examined the vehicle I would have made note of it. I feel very strongly that this is not the part I originally examined. Q. You say this is not the part you originally examined? A. That is right. This is not."

Since we have the expert's testimony that the braking system he inspected prior to trial revealed an improperly turned lock cap; whereas the one introduced in evidence admittedly did not, the issue is not one of contradiction in his testimony, but one of discrepancy between the braking system placed in evidence and the positive testimony of Mr. Fisher that this was not the braking system inspected by him prior to trial, which inspection had revealed an improper turning of the lock cap.

This discrepancy was a matter to be resolved by the jury. Regardless of the condition of the exhibit presented at trial, the jury could have believed, as it apparently chose to do, the testimony of Mr. Fisher that when the braking system was given to him after the accident and before trial it was not in the condition as that of the braking system placed in evidence, and that the condition he found prior to trial was the improper turning of the lock cap which was the cause of the accident. The jury was not bound to ignore Mr. Fisher's unequivocal testimony as to his prior examination of the braking system and to accept the condition of the braking system as placed in evidence as controlling. Whether or not there was a change in the physical evidence since the time of Mr. Fisher's examination was a matter for the jury to resolve in its determination of all the evidence presented by the plaintiff, especially since the inference can easily be drawn that had the exhibit been in the same condition at the time of Mr. Fisher's examination as it was at the time of trial, the exhibit would not have been introduced and Mr. Fisher would not have been called to testify as to his opinion with regard to its lock cap. Whether the braking system placed in evidence was in fact in the same condition as when first examined by Mr. Fisher was therefore an issue to be determined by the jury and there

is no reason to disturb the jury's finding in this respect.

The trial court also erred in its statement, "Plaintiffs' expert witness based his testimony largely on the premise that the brake and drum assembly had not been disassembled prior to his inspection." This conclusion, however, is not supported by the record because Mr. Fisher specifically testified that although his original report was based on the right front wheel assembly not being disassembled, yet *"If it was reassembled the same way as it was disassembled my opinion is the same.* To go further, as I previously stated, the scraping on the secondary shoe, which still exists, leaves no doubt in my mind that the pin was missing because if it wasn't there would be no scraping. If it does come out, scraping develops. *It is still obvious and my opinion is the same."* (Emphasis supplied)

Mr. Smith, a qualified mechanic, had previously testified that he had methodically replaced the right front wheel assembly as he had found it.

A further ground upon which the lower court based its grant of a new trial was that it had erred in failing to charge on the matter of plaintiff's contributory negligence even though not requested to do so by the defendant. The lower court states: "The testimony indicates that following the brake relining, the mother and sister of the injured plaintiff had experienced difficulty with the car pulling to the right when the brakes were applied. The injured operator was informed of this and he also noticed this condition. Notwithstanding this knowledge, the plaintiff operator, while traveling down a winding mountain road, passed another car traveling 45-50 miles per hour shortly before the accident occurred. We believe that the jury in this case should have been charged on the question of contributory negligence."

The plaintiff's sister and plaintiff testified that they believed the pulling to the right to be a natural reaction of the brakes when they were properly seating themselves. The individual who relined the brakes testified on behalf of the defendant that normally the relining has to properly reseat itself. It would be unreasonable to convict the plaintiffs with knowledge of the absence of the lock pin in the right front wheel assembly under the fact situation here presented, and a jury finding of such contributory negligence could not be sustained in reason or law.

The lower court was also of the opinion that it had committed error in allowing the following hypothetical question to be asked of Mr. Fisher by plaintiff: "If a mechanic were removing the lock cap by means of a pair of pliers, in order to do a brake job, and did not turn this at a proper angle and pulled the cap off with a tool, could he do some damage to the lock cap?" Mr. Fisher had replied to this question in the affirmative. Defendant and the trial court maintain that this question and answer were based on conjecture without support by facts placed in evidence. However, the question was based upon an adequate factual foundation, Mr. Fisher having already testified and having been cross-examined as to the manner and the method in which brake relinings are performed and having explained that pliers are used in the process.

For all of the reasons above set forth the trial court erred in disturbing the jury's verdict in behalf of the plaintiffs. Accordingly, I dissent from the majority's per curiam affirmance of the grant of a new trial.